# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| CHARLES TUCKER, et al.,   )<br>   )<br>   Plaintiffs,   )<br>   )<br>v.   )<br>   )<br>EQUIFIRST CORPORATION, et al.,   )<br>   )<br>   Defendants.   ) | **PUBLISH**<br><br>CIVIL ACTION 14-0182-WS-C |

## ORDER

This matter is before the Court on the plaintiffs' motion for remand. (Doc. 13). The parties have filed briefs in support of their respective positions, (Docs. 13, 19-21), and the motion is ripe for resolution. After careful consideration, the Court concludes that the motion is due to be granted.

## BACKGROUND

The plaintiffs filed an action in state court in June 2013, seeking to quiet title to certain property. (Doc. 1-1 at 8-10). The only named defendant was Equifirst Corporation ("Equifirst"). In December 2013, U.S. Bank, National Association, as trustee on behalf of the holders of certain certificates ("U.S. Bank"), filed a motion to intervene as of right as a defendant in the state action. (*Id*. at 192-94). In January 2014, the motion to intervene was granted. (*Id*. at 240). U.S. Bank promptly filed a motion to dismiss and amended motion to dismiss. (*Id*. at 250-56, 288-94). On March 24, 2014, the plaintiffs filed an amended complaint, which named U.S. Bank as a defendant. (*Id*. at 402-15). On April 23, 2014, U.S. Bank removed the action on the basis of the amended complaint. (Doc. 1 at 2).

## DISCUSSION

"[T]he burden of establishing removal jurisdiction rests with the defendant seeking removal." *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013); *accord Adventure Outdoors, Inc. v. Blomberg*, 552 F.3d 1290, 1294 (11th Cir. 2008). The removing defendant's burden extends to demonstrating, when properly challenged, its compliance with the procedural requirements for removal. *Timbercreek Investments, LLC v. City of Daphne Planning Commission*, 2010 WL 3613854 at *2 & n.4 (S.D. Ala. 2010). The plaintiffs raise a number of jurisdictional and procedural challenges, but the Court finds one dispositive.

"The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based …." 28 U.S.C. § 1446(b)(1). The plaintiffs assert that their original complaint was removable based on diversity jurisdiction and that U.S. Bank lost the right to remove by failing to do so within 30 days after its motion to intervene was granted. (Doc. 13 at 8-9; Doc. 21 at 5).[1] The Court agrees.

"Intervenors may file notices of removal if they are properly aligned as defendants …." 14C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3730 (4th online ed. 2014) ("FPP"). Once its motion to intervene was granted, U.S. Bank was properly aligned as a defendant to the original complaint.[2]

---

[1] The plaintiffs asserted this defect in removal procedure in a timely fashion. *See* 28 U.S.C. § 1447(c). U.S. Bank does not argue otherwise.

[2] Although the motion to intervene identified Select Portfolio Services, Inc. ("SPS") as the movant, SPS was explicitly acting "as servicer" for U.S. Bank, and the motion was filed by counsel for U.S. Bank, not counsel for SPS. (Doc. 1-1 at 192, 194). The order granting the motion to intervene identified the motion as having been "filed by US BANK NATIONAL ASSOC. (SPS)," and the docket sheet added US Bank, not SPS, as a party defendant. (*Id*. at 4, 240). Both the original and amended motions to dismiss, by their terms, were filed by "Defendant U.S. Bank." (*Id*. at 250, 255, 288, 293). Finally, U.S. Bank concedes both that it filed the motion to intervene and that it intervened in the state action as a defendant. (Doc. 1 at 2; Doc. 1-1 at 250, 288-89; Doc. 19 at 2, 6-7).

U.S. Bank received the initial complaint before filing its motion to intervene. (Doc. 1-1 at 193, ¶ 4). Thus, if the case was then removable, the 30-day period began to run when the motion to intervene was granted.[3]

The parties to the original action were of diverse citizenship. As U.S. Bank points out in its notice of removal, at all times since the commencement of the state action, the plaintiffs have been citizens of Alabama, and Equifirst and U.S. Bank have not. (Doc. 1 at 4-5).

By U.S. Bank's own argument, the amount in controversy under the original complaint to quiet title exceeded $75,000. U.S. Bank is the holder of a note secured by a mortgage on the plaintiffs' property. (Doc. 1-1 at 290). As U.S. Bank argued in its motions to dismiss, the plaintiffs' quiet title claim, if successful, would "eliminate [its] mortgage lien" and award the plaintiffs title to the property "free and clear of their debt" or "loan obligation." (*Id.* at 253, 255, 291-93). U.S. Bank insists in opposition to remand that, in the amended complaint, the plaintiffs "have pled the entire debt into issue by seeking to have the mortgage extinguished and removed from the property." (Doc. 19 at 11). Since the original complaint likewise sought to have the mortgage extinguished and removed from the property, by U.S. Bank's reasoning the original complaint likewise placed the entire debt amount in issue. That amount, as U.S. Bank has demonstrated from its own records, exceeds $138,000. (*Id.*).[4]

---

[3] *Bank of New York Mellon v. Walnut Place LLC*, 819 F. Supp. 2d 354, 359 (S.D.N.Y. 2011) ("Courts confronting the special issue of the timeliness of removal by an intervenor rather than a defendant have held that the thirty day statutory period begins to run either on the date an intervention petition is filed in the state court from which removal is sought or on the date the state court grants the motion to intervene.") (emphasis and internal quotes omitted), *rev'd on other grounds, BlackRock Financial Management Inc. v. Segregated Account of Ambac Assurance Corp.*, 673 F.3d 169 (2nd Cir. 2012); *cf. FDIC v. Loyd*, 955 F.2d 316, 327 (5th Cir. 1992) (when the FDIC is the intervening defendant, the 30-day removal period begins when it files its motion to intervene).

[4] The plaintiff's motion to strike this evidence, (Doc. 22), is **denied**.

The accuracy of U.S. Bank's analysis is not before the Court. What matters is that, by U.S. Bank's own insistence, more than $75,000 was in controversy under the original complaint. Because the parties to the original complaint were diverse, because U.S. Bank was a defendant to that complaint once it intervened, and because it had by that time received a copy of the original complaint, its 30-day window for removal opened in January 2014 and closed in February 2014.

U.S. Bank does not deny that the original complaint was removable once it intervened or that it failed to remove within the 30-day period of Section 1446(b)(1). Instead, it invokes a so-called "revival exception" as bestowing upon it a fresh, second 30-day removal period under that subsection, triggered by the filing of the amended complaint. (Doc. 19 at 9).

"Section 1446(b) of the Judicial Code provides that if a case filed in a state court, though removable to federal court, is not removed by petition within 30 days of the receipt of the complaint, it is not removable thereafter." *Wilson v. Intercollegiate (Big Ten) Conference Athletic Association*, 668 F.2d 962, 965 (7th Cir.1982). According to *Wilson*, "[t]he courts, however, have read into the statute an exception for the case where the plaintiff files an amended complaint that so changes the nature of his action as to constitute substantially a new suit begun that day." *Id*. (internal quotes omitted). In such a situation, the defendants are given a "right to revive" the 30-day removal period. *Id*. Relying on *Wilson*, the Fifth Circuit has adopted the phrase, "revival exception." *Johnson v. Heublein Inc.*, 227 F.3d 236, 241-42 (5th Cir. 2000). Citing *Wilson* and *Johnson*, U.S. Bank asserts that the amended complaint "presents a host of new issues, claims, and demands for relief" sufficient to trigger the "revival exception." (Doc. 19 at 9). However, U.S. Bank – which bears the burden of demonstrating the timeliness of removal – has not by its nine-line treatment persuaded the Court that a "revival exception" is or would be recognized in the Eleventh Circuit.

The *Johnson* Court, 227 F.3d at 241-42, cited the former Fifth Circuit case of *Cliett v. Scott*, 233 F.3d 269 (5th Cir. 1956), for the proposition that "the

authorities are overwhelming that, though a defendant has submitted himself to state court jurisdiction on one cause of action, this does not prevent his removing the cause when an entirely new and different cause of action is filed." *Id*. at 271. This unamplified statement is at best an observation made in passing about what other courts have concluded; it is dicta rather than holding because it was completely unnecessary to resolution of the appeal.[5] In the 58 years since *Cliett* was handed down, no Eleventh or former Fifth Circuit opinion has cited it for this proposition, and no other binding decision standing for such a proposition has been brought to the Court's attention. Several sister courts have recently confirmed that "the Eleventh Circuit has neither adopted nor rejected the so-called 'revival exception.'"[6] For all these reasons, the Court concludes that the existence of such an exception is an open question in the Eleventh Circuit.

The Court does not believe that the Eleventh Circuit would recognize a "revival exception" to Section 1446(b)(1) were the question presented. "A defendant's right to remove an action against it from state to federal court is purely statutory and therefore its scope and the terms of its availability are entirely dependent on the will of Congress." *Global Satellite Communication Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1271 (11th Cir. 2004) (internal quotes omitted).

---

[5] *See United States v. Kaley*, 579 F.3d 1246, 1253 n.10 (11th Cir. 2009) "[T]he holding of a case is … comprised both of the result of the case and those portions of the opinion necessary to that result by which we are bound," while "dicta is defined as those portions of an opinion that are not necessary to deciding the case then before us.") (internal quotes omitted).

The plaintiffs' only argument in favor of remand in *Cliett* was that the defendants, "having not only submitted to the jurisdiction of the state court but having invoked its jurisdiction by becoming cross-plaintiffs[,] ceased to be defendants and became in effect plaintiffs." 233 F.2d at 271. Whether the defendants by their conduct had effectively become plaintiffs (they clearly had not) had nothing to do with the allegations of the plaintiffs' amended petition.

[6] *Cancel v. Sewell*, 2011 WL 240132 at *4 (M.D. Ga. 2011); *accord Daggett v. American Security Insurance Co.*, 2008 WL 1776576 at *2 (M.D. Fla. 2008) (Steele, J.); *Eparvier v. Fortis Insurance Co.*, 2008 WL 3367542 at *3 (M.D. Fla. 2008) (Presnell, J.).

The will of Congress is of course gleaned from what it has written, and in considering the statutory text, "[t]he rule of construing removal statutes strictly and resolving doubts in favor of remand … is well-established." *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1328 (11th Cir. 2006); *accord Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 32 (2002) ("These statutory procedures for removal are to be strictly construed.").

The concept of strictly construing the removal statutes is commonly applied when the question is whether the federal court has subject matter jurisdiction, but the same principle applies to the procedural requirements for removal. Both *Syngenta* and *Miedema* cited *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941), for the proposition that "[t]he policy of the successive acts of Congress regulating the jurisdiction of federal courts is one calling for the strict construction of" removal statutes. *Id*. at 108. The *Sheets* Court relied on this proposition to conclude that a plaintiff cannot remove based on a defendant's counterclaim against it, even if the counterclaim would fall within the federal court's original jurisdiction. *Id*. at 104-09. The question of who may remove is of course one of procedure, not of subject matter jurisdiction. *See also Russell Corp. v. American Home Assurance Co*., 264 F.3d 1040, 1050 (11th Cir. 2001) (applying the principle that "there is a presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand," to the procedural issue of whether consent to removal must be unanimous among all defendants).

Section 1446(b)(1) states that the 30-day removal period for an action that is initially removable generally begins to run upon "the receipt by the defendant, through service or otherwise, of a copy of the initial pleading." In *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc*., 526 U.S. 344 (1999), the Supreme Court held that the clock cannot begin to run before service of process. *Id*. at 347-48. The dissent complained that this ruling "departs from this Court's practice of strictly construing removal and similar jurisdictional statutes." *Id*. at 356

6

(Rehnquist, C.J., dissenting). The Eleventh Circuit has read *Murphy Brothers* as "signal[ing] a slight departure from the weight courts might ordinarily put on strict construction of the removal statute." *Bailey v. Janssen Pharmaceutica, Inc.*, 536 F.3d 1202, 1207 (11th Cir. 2008). Perhaps, but only when, as in *Murphy Brothers*, the statutory language (or, more precisely, one of multiple reasonable constructions of that language) conflicts with a pre-existing "bedrock principle" and "longstanding tradition in our system of justice," from which "the legislators did not endeavor to break away." 526 U.S. at 347, 350, 351.[7] Absent such an unusual circumstance – which is not present here – the rule of strictly construing the procedural requirements of removal remains in full force.

With the proper rule of construction in mind, the Court turns to the statutory language:

> The notice of removal of a *civil action* or proceeding *shall* be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the *initial pleading* setting forth the claim for relief upon which such action or proceeding is based
> ….

---

[7] The bedrock principle in play in *Murphy Brothers* was that no defendant may be subjected to "any procedural imposition" before being served with process "or other authority-asserting measure." 526 U.S. at 350. Since Congress showed no evidence that it "intended to dispense with the historic function of service of process as the official trigger for responsive action by [a] defendant," *id*. at 353, the phrase "or otherwise" could not be read to trigger the 30-day period prior to service of process but could be read to permit triggering the removal time by informal receipt of the complaint "after and apart from service of the summons." *Id*. at 347-48.

There is no indication that U.S. Bank was formally served with process concerning the original complaint. That is immaterial, however, because U.S. Bank voluntarily subjected itself to the jurisdiction of the state court by successfully moving to intervene as a defendant, with the order granting the motion to intervene serving as the "authority-asserting measure." U.S. Bank thereby became subject to all applicable procedural rules, including Section 1446(b). U.S. Bank has by its silence waived any argument to the contrary.

28 U.S.C. § 1446(b)(1) (emphasis added, internal quotes omitted).[8]  This provision "deals with civil actions that are removable at the time of commencement," *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 757 (11th Cir. 2010), and it thus applies to this action.[9]

Section 1446(b)(1) states that a notice of removal "shall" be filed within 30 days of receiving the initial pleading in the action.  "[T]he mandatory 'shall' … normally creates an obligation impervious to … discretion." *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998).[10]  This must be especially so in the context of Section 1446(b)(1), where Congress in 1949 amended the original "may be filed" to the current "shall be filed," *Murphy Brothers*, 526 U.S. at 351-52, demonstrating that Congress desired to underscore the mandatory nature of timely removal.  In short, the term "shall" unambiguously requires that removal of an originally removable action be accomplished within the time set forth in Section 1446(b)(1).[11]

---

[8] The concluding clause of Section 1446(b)(1) pegs the start of the 30-day removal period to service of summons alone if the complaint has been filed and, under state law, need not be served.  This alternative provision was added to address the situation in states such as Kentucky. *Murphy Brothers*, 526 U.S. at 351 n.4.  Because nothing in this clause is more suggestive of a revival exception than what appears in the language quoted in text, the Court confines its discussion to the latter.

[9] The time for removal when "the case stated by the initial pleading is not removable" is governed by Section 1446(b)(3).  At the time *Pretka* was decided, Section 1446(b)(1) was the "first paragraph" of Section 1446(b), and Section 1446(b)(3) was the "second paragraph" of Section 1446(b).  608 F.3d at 757.  A 2011 amendment separated the paragraphs into separate subsections but did not meaningfully alter their content.

[10] *Accord National Association of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 661 (2007); *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002); *Miller v. French*, 530 U.S. 327, 337 (2000).

[11] *Romulus v. CVS Pharmacy, Inc.*, ___ F.3d ___, 2014 WL 5422160 at *5 (1st Cir. 2014) (the "shall" in Section 1446(b)(1) is mandatory); *cf. Metropolitan Washington Airports Authority v. Citizens for Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 269 n.15 (1991) ((the statutory phrase, "shall consist of," unambiguously required a certain composition); *Williams v. Warden*, 713 F.3d 1332, 1339 (11th Cir. 2013) (the statutory phrase, "shall not entertain," unambiguously stripped the courts of the power to act).

The 30-day clock established by Section 1446(b)(1) begins to run upon receipt of the "initial pleading." This phrase is as unambiguous as "shall," because "initial" by definition means "first." *E.g.*, American Heritage Dictionary 903 (5th ed. 2011).[12] There cannot be multiple "first" pleadings against a defendant in a single civil action.

The third and final statutory term that might support a revival exception is "civil action." Under Section 1446(b)(1), removal must occur within 30 days of receipt of the initial pleading in a "civil action." If a new civil action can be commenced by the filing of an amended complaint in an existing civil action, then the amended complaint could constitute the "initial pleading" in the new "civil action."[13]

"Unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning." *BP America Production Co. v. Burton*, 549 U.S. 84, 91 (2006). A "civil action" is simply "a civil … judicial proceeding." Black's Law Dictionary 32, 279 (9th ed. 2009) ("Black's"); *see Burton*, 549 U.S. at 91 & n.3 (relying on Black's for the ordinary meaning of "action"). A "proceeding" is "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment." Black's at 1324. A "complaint" is "[t]he initial pleading that starts a civil action …." *Id*. at 323; *see also Burton*, 549 U.S. at 91 n.3 (quoting Black's for this definition).

---

[12] *See also United States v. Granderson*, 511 U.S. 39, 71 (1994) (equating "initial" with "first in order"); *United States v. DeJarnette*, 741 F.3d 971, 981 (9th Cir. 2013) (the "plain meaning" of "initial registration" is "the first time an offender registers").

[13] Section 1446(b)(1) addresses the time for removal of a civil action "or proceeding." This term does not appear generally in the removal statutes and seems to address primarily the proceedings described in Section 1442(d)(1). A revival exception could not be drawn any more easily with respect to a "proceeding" than with respect to a civil action and, in any event, this case involves a civil action, not some other kind of proceeding.

As the preceding paragraph reflects, the ordinary meaning of "civil action" is a single proceeding begun with a complaint and continuing all the way through entry of judgment. There is not the slightest indication that Congress in the removal statutes used the term in any other sense, and under general rules of statutory construction the courts are required to give the term its ordinary meaning. The Court has been made aware of no colorable argument to the contrary. Because the filing of an amended complaint is an act or event occurring between commencement and judgment, it is part of a single, ongoing civil action and cannot commence a new "civil action" under Section 1446(b)(1).

In short, the language of Section 1446(b)(1) unambiguously precludes judicial recognition of a "revival exception." No resort to a rule of strict construction is necessary to reach this conclusion. However, the rule requiring the strict construction of statutory removal procedures does support and underscore the conclusion. That rule is based on recognition of the federalism concerns implicated when a case properly in state court – often, one implicating only state law – is nevertheless swept into a federal forum. "Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Sheets*, 313 U.S. at 109 (internal quotes omitted). Creating an exception to removal deadlines that is neither expressed in the removal statutes nor clearly implied from them does not serve the interests of federalism and does not honor the direction to strictly construe statutory removal procedures.

How then did the *Wilson* and *Johnson* Courts square a "revival exception" with the language of Section 1446(b)(1) and the rule of strictly construing the removal statutes? They did not attempt to do so. The *Wilson* Court, without analysis, cited certain authorities (discussed below) and simply accepted that such an exception exists. 668 F.2d at 965. The *Johnson* Court cited *Wilson*, *Cliett* and certain other authorities (discussed below) and likewise accepted without analysis that a revival exception exists. 227 F.3d at 241-42. The question thus becomes

whether the authorities on which the Fifth and Seventh Circuits relied provide the necessary statutory analysis missing from *Wilson* and *Johnson*. As is shown below, they do not.

The principal authority on which the *Wilson* Court relied is *Fletcher v. Hamlet*, 116 U.S. 408 (1886). The plaintiffs in *Fletcher* sued a business firm composed of four individuals. Under governing Louisiana law, judgment against the firm would expose the individuals' assets to payment of the debt, and service on the individuals would bind them personally. The plaintiffs served the firm and one individual, who did not remove. After the removal period expired, the plaintiff served a second individual, and the two individuals removed. The Supreme Court ruled that removal was improper because, as to the first individual, removal was untimely and, since removal had to be by all defendants, the first individual's "disability" infected the second individual's removal. *Id*. at 409-10.

The defendants recognized their problem but argued that service on the second individual "so changed the character of the litigation as to make it substantially a new suit begun that day." 116 U.S. at 410. The Supreme Court did not agree that such an alteration would permit an otherwise tardy removal but simply concluded there had been no such alteration:

> It is conceded that the suit was not removable when the petition for removal was filed, unless the service of process on Fletcher on the fourth of June so changed the character of the litigation as to make it substantially a new suit begun that day. In our opinion such was not the effect of the new process.

*Id*. It seems clear that the phrase, "[i]t is conceded," does not express the Supreme Court's approval of a "revival exception" but denotes only the defendants' concession that they could prevail only were the Court to recognize such an exception and find its requirements satisfied in their case. The Court did not recognize the exception as a legal matter but instead found no grounds to employ such an exception as a factual matter.

11

Even were it possible to read *Fletcher* as acknowledging a revival exception, such an acknowledgment would be no more than dicta. Because the Court found that service on the second defendant did not amount to a new lawsuit, the existence vel non of a revival exception was not necessary to its decision and so could not be holding but only dicta. And not just dicta but unreasoned dicta, unaccompanied by the slightest sliver of explanation how such an exception to clear statutory language could come into being.

The only other authorities acknowledged by the *Wilson* Court as confirming the existence of a revival exception are *Cliett*, a respected treatise, "and cases cited therein." 668 F.2d at 965. As discussed above, *Cliett* contains no such holding but only an observation about what other courts have said.[14] The treatise states in pertinent part as follows:

> The courts generally … fin[d] removal to be timely … if a pleading amendment … changes the character of the litigation so as to make it substantially a new suit. This seems quite appropriate since a willingness to remain in state court to litigate a particular claim should not be interpreted as a willingness to remain in state court to adjudicate an entirely different claim.

14C FPP § 3731. While the treatise finds a revival exception appropriate because it caters to defendants' changing attitudes towards removal, it does not offer an explanation how such an exception could be compatible with the language of the statute, with or without a strict construction of its procedural requirements.

Among the "cases cited therein" as of the *Wilson* decision in 1982, only one merits discussion.[15] The plaintiffs in *Henderson v. Midwest Refining Co.*, 43 F.2d

---

[14] The deficiencies in the four cases to which the *Cliett* Court cited, 233 F.2d at 271 n.2, are discussed in text *infra*.

[15] Two cases cited by the treatise were second-paragraph cases, where the case was not removable prior to amendment. *See O'Bryan v. Chandler*, 496 F.2d 403 (10th Cir. 1974); *Hearst Corp. v. Shopping Center Network, Inc.*, 307 F. Supp. 551 (S.D.N.Y. 1969). Three merely cited authorities discussed in text herein. *See Craig Food Industries, Inc. v. Taco Time International, Inc.*, 469 F. Supp. 516 (D. Utah 1979); *Board*

23 (10th Cir. 1930), sued the diverse defendant in equity for an accounting but later filed an amended petition that omitted the original claim and replaced it with a cause of action in law for conspiracy to defraud. *Id*. at 24-25. The Tenth Circuit described the change as "an abandonment of the original for a new cause of action" and ruled that, "when the plaintiffs filed their amended petition stating a new and different cause of action, appellee's right to remove that case could not and did not arise until the amended petition was filed …." *Id*. at 25. "Defendant apparently was content to remain in the state court on the cause of action stated in the original petition, but that seems to be no reason for denying to it its right of removal of an entirely new and different cause of action pleaded in the so-called amended petition." *Id*.

The *Henderson* Court cited two cases as supporting its resolution.[16] In *Mecke v. Valley Town Mineral Co.*, 89 F. 209 (W.D.N.C. 1898), the original complaint sought no relief against the removing defendant, and the Court relied exclusively on what would now be described as a second-paragraph case. *Id*. at 211-13. In *Evans v. Willingham*, 43 F. 177 (N.D. Tex. 1890), the Court held that the removal petition was in fact timely filed under the general rule but then continued in dicta with the observation that "[t]here is no question in my mind that, where an amended petition makes a substantially different suit from the original petition, the limitation as to the time within which the petition for removal can be presented should relate to the new pleading of the plaintiff." *Id*. at 179-80. As its only support for this ipse dixit, the Court described a quintessential second-paragraph removal. *Id*. at 180.

---

*of Supervisors v. H.K. Porter Co.*, 424 F. Supp. 100 (S.D. Miss. 1976); *Adams v. Western Steel Buildings, Inc*., 296 F. Supp. 759 (D. Conn. 1969).

[16] The Tenth Circuit also cited two cases involving "departure in pleading," 43 F.2d at 25, but they concern the relation back of amendments, not the timeliness of removal.

So much for *Wilson*'s authorities. The *Johnson* Court relied on *Fletcher*, *Wilson*, *Cliett*, *Henderson*, *Evans* and FPP. 227 F.3d at 241-42. All of these authorities suffer from the infirmities discussed above. *Johnson* also relies on *Mattoon v. Reynolds*, 62 F. 417 (D. Conn. 1894), and *Baron v. Brown*, 83 F. Supp. 520 (S.D.N.Y. 1949). The twelve-line opinion in *Mattoon* simply cites *Evans* and three second-paragraph cases, while the two-line analysis in *Baron* merely cites *Evans*. *Id*. at 521.

The foregoing discussion explains why the Court cannot give weight to the declarations of the Fifth and Seventh Circuits that a revival exception exists. Neither they nor the authorities on which they rely offer any justification for such an exception beyond misconstructions of *Fletcher*, flawed extrapolations from the second-paragraph context, and unexamined acceptance of what prior authorities (often in dicta) themselves accepted without examination – all apparently stemming from a vague sense that defendants deserve a more relaxed removal standard than Congress has provided.[17] Other cases, uncited by *Wilson* or *Johnson* but reviewed by the Court, reflect similar tendencies.[18]

As long ago as 1898, the Supreme Court declared that the removal statute must be construed as, "in intention and effect, permitting and *requiring the defendant to file a petition for removal as soon as the action assumes the shape of*

---

[17] *Wilson*'s recognition of a revival exception is itself dicta, since the Court held that the appellee's removal could not be justified under the exception, rendering the existence vel non of the exception unnecessary to its decision. 668 F.2d at 966.

[18] It is telling that, far from grounding the exception in the language of the removal statutes, courts – including the Fifth Circuit – have described the revival exception as "judicially created." *See, e.g., Johnson*, 227 F.3d at 241; *GeoVantage, Inc. v. SimWright, Inc.*, 2014 WL 183667 at *1 (D. Mass. 2014); *Flora v. Luzerne County*, 2013 WL 4520854 at *2 (M.D. Pa. 2013); *Cancel*, 2011 WL 240132 at *5; *Doe v. Florida International University Board of Trustees*, 464 F. Supp. 2d 1259, 1261 (S.D. Fla. 2006); *Ray*, 2006 WL 5085249 at *2; *In re: Methyl Tertiary Butyl Ether Products Liability Litigation*, 2006 WL 1004725 at *3 (S.D.N.Y. 2006). Of course, there is a critical difference between an exception created by the judiciary and an exception created by Congress and discerned by the judiciary.

14

*a removable case* in the court in which it was brought." *Powers v. Chesapeake & Ohio Railway Co.*, 169 U.S. 92, 100-01 (1898) (emphasis added). A revival exception would directly contradict this reading of the statute, allowing removal long after the action was first removable. No known case discussing the revival exception has sought to reconcile the exception with *Powers*.[19]

The Court is not the first to question the existence and/or propriety of a revival exception:

> The Court doubts that a revival exception can be read into the clear dichotomy set forth in § 1446(b). Either a case is removable based on the initial pleading or it is not. If it is removable, defendant must do so within thirty days. Subsequent conduct can only affect removability if the case was not originally removable. If Congress had wanted to place a third window of opportunity for removal coinciding with certain kinds of amendments to existing actions, it could have done so.

*Daggett v. American Security Insurance Co.*, 2008 WL 1776576 at *3 (M.D. Fla. 2008).[20] The question fairly raised, the Court addresses it and concludes that no

---

[19] Or with *Pretka*, in which the Eleventh Circuit confirmed that "Section 1446(b) is based on the recognized policy of the federal courts to require, as far as possible, prompt action on the part of those seeking a removal …." 608 F.3d at 767 (internal quotes omitted).

[20] S*ee also Dunn v. Gaiam, Inc.*, 166 F. Supp. 2d 1273, 1279 (C.D. Cal. 2001) (Collins, J.) ("[G]iven the strict construction which the Court must apply to the removal statutes, on procedural as well as substantive issues, the wisdom of such a judicially-created exception might be questioned as an initial matter.") (footnote omitted); *Gray v. Martin*, 2013 WL 6019335 at *3 (E.D. Ky. 2013) (the revival exception is "a questionable doctrine"); *Ray v. Trimpspa Inc.*, 2006 WL 5085249 at *3-4 (C.D. Cal. 2006) (Matz, J.) ("As the *Dunn* Court recognized, the revival exception is a doctrine of dubious application in light of the strict construction this court must accord to the removal statutes ….").

In addition, numerous cases could be cited for the proposition that "[s]ubsequent events do not make [a case] 'more removable' or 'again removable.'" *Eminence Investors, L.L.L.P. v. Bank of New York Mellon*, ___ F.3d ___, 2014 WL 2567172 at *7 (E.D. Cal. 2014) (internal quotes omitted). Other recent examples include *Cancel*, 2011 WL 240132 at *4; *Williams v. EDCare Management, Inc.*, 2008 WL 4755744 at *8 (E.D. Tex. 2008); *Mountain State Land Co. v. DLH*, 2008 WL 4058420 at *3 (S.D.W. Va. 2008); *Scott v. Grange Insurance Association*, 2006 WL 1663565 at *3 (E.D. Wash.

15

"revival exception" exists. As discussed above, the Court's statutory analysis compels this conclusion, Supreme Court precedent supports it, and the unreasoned authorities finding or assuming the existence of such an exception do not undermine it.

That some may find Section 1446(b)(1)'s strict 30-day limit harsh or even unfair is beside the point. "There are several bright line limitations on removal jurisdiction ... that some might regard as arbitrary and unfair. Such limitations, however, are an inevitable feature of a court system of limited jurisdiction that strictly construes the right to remove." *Russell Corp.*, 264 F.3d at 1050 (addressing the unanimity requirement).

Any perceived harshness in the regime Congress has enacted is in any event mostly hypothetical. In the first place, Section 1446(b)(1) preserves in every initially removable case an opportunity for removal, so any failure to remove is the direct result of a defendant's decision not to do so.[21] Moreover, courts have repeatedly stated that, other than *Johnson*, they can find no case (presumably excluding the hoary opinions on which *Wilson* and *Johnson* rested) in which the revival exception has been found to be satisfied[22] – despite 86 reported cases employing the term "revival exception" just since 1987.[23] It seems unlikely that

---

2006); and *Black v. Brown & Williamson Tobacco Corp.*, 2006 WL 744414 at *3 (E.D. Mo. 2006).

[21] This compares favorably with the treatment of cases first shown to be removable on the basis of diversity more than one year after commencement of the action, which are immune to removal absent the plaintiff's bad faith. 28 U.S.C. § 1446(c).

[22] *E.g., Valley Management, Inc. v. Boston Road Mobile Home Park Tenants Association*, 736 F. Supp. 2d 344, 351 (D. Mass. 2010); *Cancel*, 2011 WL 240132 at *5; *Scott*, 2006 WL 1663565 at *3.

[23] As this opinion reflects, other cases – including *Wilson* – have addressed a revival exception without calling it by that name.

an exception successfully invoked only a few times per century is a critical component of a properly functioning removal procedure.

## CONCLUSION

Given the exceeding difficulty of satisfying the exception, as witnessed by the extremely high failure rate of those invoking it, the defendants probably could not do so in this case. The Court's holding, however, is that the revival exception does not exist in, and would not be recognized by, the Eleventh Circuit. The defendants' removal was thus fatally untimely. On that basis, the motion for remand is **granted**. This action is **remanded** to the Circuit Court of Escambia County.

DONE and ORDERED this 6th day of November, 2014.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE